In the Matter of: The Will of WILLIE SPAIN WILSON, Deceased.

(Filed 12 December 1962.)

1. **Wills § 4;    Evidence § 11—    The fact that person "finding" will knew of its location prior to testatrix's death is immaterial.**

Testimony of a beneficiary of a holographic will that he found the instrument in a pigeon hole of a desk in the hall of his home, that other valuable papers of testatrix were also in the pigeon hole, and that he knew of the will and had put it with testatrix's other valuable papers, *is held* competent when other evidence discloses that testatrix lived in the home for a number of years prior to her death, had access to the papers and that a number of transactions recorded on her bankbook deposited with the other papers had been made by her subsequent to the execution of the will, there being no contention or suggestion of any suspicious circumstances or undue influence. The fact that the beneficiary knew of the location of the will does not preclude his "finding" the will, nor does the testimony come within the purview of G.S. 8-51, precluding testimony of a transaction by an interested party with a decedent.

IN RE WILL OF WILSON.

**2. Trial § 37—**
> While the court, if it gives the contentions of one party, must give the contentions of the opposing party with equal stress, the court is not required to state the contention of either party at all, and if the court does not do so the contention that the charge contained the expression of an opinion in the manner of stating the contentions is untenable.

APPEAL by caveators Robert L. Reavis, *et al*, from *Clark (H.R.), J.*, March Term 1962 of VANCE.

This is a caveat proceeding.

Willie Spain Wilson died on 21 March 1960. For seventeen years prior to her death she had lived in the home of her brother, Frank H. Spain, in Vance County, North Carolina. Subsequent to her death, the paper writing, "Exhibit A," written entirely in the handwriting of Mrs. Willie Spain Wilson and purporting to be her last will and testament, was found in a pigeon hole of a desk located in Mr. Spain's home. The paper writing was enclosed in an envelope, "Exhibit H," on which Mrs. Wilson had written her name and the word "Important"; this envelope was in turn folded and enclosed in another envelope, "Exhibit I," on which Mrs. Wilson had written the words "Important Papers." Also included within the same pigeon hole of the desk were certificates of title (deposit) belonging to Mrs. Wilson; an envelope, "Exhibit F," on which Mrs. Wilson had written the words "My Bank Books," and which contained four bank books, "Exhibits B, C, D and E," belonging to Mrs. Wilson, and two keys to Mrs. Wilson's safe deposit box at the bank; and another envelope, "Exhibit G," on which Mrs. Wilson had written "Important" and "Insurance on the home," containing fire insurance papers, crop insurance papers, and life insurance papers. All of these items in the pigeon hole belonged to Mrs. Willie Spain Wilson.

On 12 May 1960, the paper writing in question, "Exhibit A," was probated in common form as the last will and testament of Mrs. Willie Spain Wilson before the Clerk of the Superior Court of Vance County, and Frank H. Spain qualified as administrator c.t.a. of Mrs. Wilson's estate. On 23 June 1961, a caveat to the purported will was filed in the Superior Court of Vance County. The issue of *devisavit vel non* was tried at the March Term 1962 of the Vance County Superior Court, at which time the jury answered the issue in favor of the propounders and judgment was rendered on the verdict.

The caveators appeal, assigning error.

*Zollicoffer & Zollicoffer for propounder appellees.*
*Charles F. Blackburn, guardian ad litem.*
*Charles M. Davis and William T. Watkins for caveator appellants.*

DENNY, C.J.   The primary question presented on this appeal is whether or not an interested party may testify as to where the purported will of a testatrix was found after her death.

On direct examination, Frank H. Spain, a beneficiary under the purported will, testified that the paper writing, including the testatrix's signature, was in the handwriting of the testatrix, Willie Spain Wilson; that the paper writing was found in a pigeon hole of the desk that sat in the hall of his home where she had lived for seventeen years prior to her death, and that other valuable papers and effects of the testatrix were found in this same location, including insurance papers, four bank books and two keys to her lock box at the bank.

On cross-examination, Mr. Spain testified that he knew Mrs. Wilson had a will and knew where it was; that he put it there. He further testified that the purported will had been kept in the pigeon hole of the desk with the testatrix's other valuable papers for more than eight years prior to her death.

It is apparent, we think, from the evidence disclosed by the record that the testatrix had access to her valuable papers whenever she desired to have access thereto, since her life insurance policies were there, the proceeds of which she referred to in the purported will, and her fire and crop insurance policies. Furthermore, the bank books disclose deposits and withdrawals over a long period of years prior to her death and show a balance in the savings departments of the Citizens Bank of Henderson, North Carolina, and the First National Bank in Henderson, North Carolina, in the name of the testatrix, aggregating more than $12,000.

The caveators contend, however, that the testimony of Frank H. Spain was inadmissible since his knowledge of the existence of the will and its location was known to him prior to the death of the testatrix; that he could not possibly have found the will within the meaning of the statute since he already knew where it was. Therefore, they say the will must be "found after testator's death." Hence, the caveators contend that the paper writing which the propounders contend is the last will and testament of Willie Spain Wilson was never found. The caveators further contend that the word "found," being the past participle of "find," means to discover, and that the word "discover" means to "uncover that which was hidden, concealed, or unknown from everyone; to get first sight or knowledge of; to get knowledge of what has existed but has not theretofore been known to the discoverer." We do not concede that since Frank H. Spain knew his sister had a will and that it had been placed with her valuable papers kept in his desk in the home where she had lived for seventeen years prior to her death, he was disqualified from testifying that

after her death he found the purported will among her valuable papers. *In re Will of Gilkey*, 256 N.C. 415, 124 S.E. 2d 155; *In re Westfeldt*, 188 N.C. 702, 125 S.E. 531; *In re Will of Foy*, 193 N.C. 494, 137 S.E. 427; *Cox v. Lumber Co.*, 124 N.C. 78, 32 S.E. 381.

The testimony of Frank H. Spain is further challenged on the ground that any knowledge regarding the purported will and where it was located was obtained as the result of a personal transaction or communication with the testatrix and should have been excluded by virtue of the provisions of G.S. 8-51.

In light of the testimony adduced in the hearing below, we reject these contentions both as to where the purported will was found and the contentions based upon the provisions of G.S. 8-51 with respect to a personal transaction or communication with the testatrix.

The correct rule with respect to evidence on the particular point under consideration is laid down in the case of *In re Jenkins*, 157 N.C. 429, 72 S.E. 1072: "The fact that it (a paper writing) is found among the writer's valuable papers and effects implies that it must have been placed there by him, or with his knowledge and consent or approval, with the intent that it should operate as his will, and not that it was deposited surreptitiously by another person for the purpose of defeating instead of executing his will. If the paper is so found, it will be presumed that the deposit of it in the first place was made by him or with his assent, and, in the absence of evidence to the contrary or of suspicious circumstances, no proof of the fact is required. * * * The statute does not demand proof that the author of the paper made the deposit, but only that it was *found* among his valuable papers and effects, and proof of this fact is quite sufficient, at least, in the first instance and when there is no countervailing proof. ' "Valuable papers' " within the meaning of the statute are such papers as are kept and considered worthy of being taken care of by the particular person, having regard to his condition, business, and habits of preserving papers. They do not necessarily mean the most valuable papers of the decedent even, and are not confined to papers having a money value, or to deeds for land, obligations for the payment of money, or certificates of stock. The requirement is only intended as an indication on the part of the writer that it is his intention to preserve and perpetuate the paper as a disposition of his property, and that he regards it as valuable; consequently, the sufficiency of the place of deposit to meet the requirement of the statute will depend largely upon the condition and arrangements of the testator." *In re Cole's Will*, 171 N.C. 74, 87 S.E. 962.

In this proceeding there is no contention or suggestion that the testatrix did not have the mental capacity to make a will or that any

undue influence was brought to bear upon her in connection with the preparation and execution of the purported will. In fact, there are no suspicious circumstances revealed on the record in connection with the preparation, execution, or preservation of the testatrix's will.

These assignments of error are overruled.

The caveators assign as error the charge of the court for that the court failed to explain the law arising on the evidence given in the case, "and failed to give equal stress to the contentions of the caveators and the propounders; in fact, the court failed to give any of the contentions whatsoever of the caveators when the contentions of the propounders were repeatedly stressed, in violation of General Statutes 1-180."

A careful examination of the charge in the trial below reveals that the trial judge devoted most of the charge to the applicable law in the case raised by the evidence. On the other hand, the court did not give a single contention of the propounders or of the caveators in the entire charge. The trial judge is not required by law to state the contentions of litigants to the jury. When, however, the judge undertakes to state the contentions of one party, he must also give the equally pertinent contentions of the opposing party. *S. v. Kluckhohn,* 243 N.C. 306, 90 S.E. 2d 768; *Brannon v. Ellis,* 240 N.C. 81, 81 S.E. 2d 196; *S. v. Colson,* 222 N.C. 28, 21 S.E. 2d 808; *Trust Co. v. Insurance Co.,* 204 N.C. 282, 167 S.E. 854.

This assignment of error is without merit and is overruled.

The remaining assignments of error reveal no prejudicial error, and, in the trial below, we find

No error.