BROWN, J., took no part in the decision of this case.
The plaintiffs are the sister and nephew and only heirs at law and next of kin of Sylvester Brown, who died in an insane asylum in Virginia, where he had been confined for several years. He died unmarried and without issue, 25 December, 1915, seized of real and personal property in Beaufort County. The administrator, who qualified in Beaufort, holds said personal estate for distribution upon determination of this action. The plaintiffs, as heirs at law, have divided the land by deed, duly registered.
On 20 January, 1916, the defendant S.D. Brown, a nonresident of this State, filed in the office of the Clerk of the Superior Court of Beaufort a certified copy of the last will and testament of Sylvester Brown, and of the probate thereof, in the Corporation Court of Norfolk, Va., claiming that by virtue thereof he is entitled to the real and personal property of the decedent lying in Beaufort County. *Page 251 
The complaint alleges that said paper-writing is not the last will and testament of Sylvester Brown, assigning mental incapacity and undue influence; and, further, that the certification of said paper-writing and of the proof and probate are void and of no effect, for that the laws of this State were not complied with, especially as to the said real estate, and that the only effect of filling such copy in the clerk's office is to cast a cloud upon plaintiffs' title to the said real estate. The plaintiffs asked that they be declared the owners of said real and personal property of the decedent in Beaufort County, and that said paper-writing be declared not the last will and testament of Sylvester Brown and of no effect in this State.
The alleged will is a holograph and purports to bequeath and devise the testator's entire property, real and personal, after the payment of debts and burial expenses and reserving $100 for a monument, to S.D. Brown, his cousin.
The holograph will was without subscribing witnesses. It was not found among testator's valuable papers, but the devisee, S.D. Brown, produced it and testified that it was lodged with him for safe-keeping.
When a citizen of another State devises land in this State, such devise has no "validity or operation unless the will is executed according to the laws of this State, and that fact must appear affirmatively in the certified probate or exemplification of the will." Rev., 3133; R. R. v.Mining Co., 113 N.C. 241; Drake v. Merrill, 47, N.C. 368.
The statute further provides that if it does not appear that the will was executed according to the laws of this State, the clerk shall have the power to issue a commission for taking proofs touching the execution of the will. The title to lands lying in this State can pass only by deed, or will, duly proven according to the laws of this State, or, in case of intestacy, by descent, under our statute. The will of a nonresident is not effective as to realty here unless executed according to the laws of this State, and this must affirmatively appear in the certified probate. Rev., 3133. While that section gives the clerk power to issue a commission to take proofs touching the execution of the will, this does not restrict the plaintiffs from caveating the same and requiring proof in solemn form, as in the case of the probate of a will had in this State in common form.
The testimony of S.D. Brown that the will was deposited with him for safe keeping is a most essential and indispensable fact in the execution of the will, and it was a transaction between him and the deceased, which he was incompetent to prove by Rev., 1631, and the demurrer should have been overruled. Rev., 3127 (2), requires that the holograph will must not only be proven "on the oath of at least three credible witnesses who state that they verily believe such will and every part thereof is in the handwriting of the person whose will it purports to be, and *Page 252 
whose name must be subscribed thereto, or inserted in some part thereof," but, further, "it must appear on the oath of some one of said witnesses, or some other credible person, that such will was found among the valuable papers and effects of the decedent, or was lodged in the hands of some person for safe keeping."
In Cornelius v. Brawley, 109 N.C. 542, the Court held that the widow and devisee was competent to prove that the script propounded was found among the valuable papers of the deceased, because this was not a transaction or communication between the deceased and the witness.
Alston v. Davis, 118 N.C. 213, also relied on by the defendant, does not hold that the devisee was competent to prove that the paper-writing was deposited with her, but the letter which was held to be a will, though found in her possession, stated on its face that it was deposited with her. It should not pass unmentioned that Alston v. Davis, supra, has been overruled by Spencer v. Spencer, 163 N.C. 88. Vester v. Collins,101 N.C. 114, merely held that witnessing a will at the request of a testator is not a personal transaction with the deceased which the witness is incompetent to prove (Rev., sec. 1631); the attesting witness, though a beneficiary, being the witness of the law and not of the parties. Rev., 3120, while admitting such witness as competent, renders void the devise.
In Cox v. Lumber Co., 124 N.C. 78, it was held that the executor and devisee in a will was competent to prove the existence of the will, its probate and registration, where destroyed by fire, and also its contents and his qualifications as executor, because these matters, all occurring after the death of the testator, were not transactions between him and the deceased. Under our decisions, the devisee might also prove the handwriting of a holograph will, or the signature of the testator, for these are not transactions between him and the deceased. Sawyer v. Grandy, 113 N.C. 42;Ferebee v. Pritchard, 112 N.C. 83; Buie v. Scott, 107 N.C. 181; Husseyv. Kirkman, 95 N.C. 63. So, also, a witness can prove the value of an article sold to defendant's intestate, but not that he made the sale (Marchv. Verble, 79 N.C. 19), or to prove any act of the deceased not had with himself. S. v. Osborne, 67 N.C. 259.
A witness would not be competent to prove in his own interest that he handed the deceased an account with the view of proving an implied acknowledgment. Lane v. Rogers, 113 N.C. 171. The defendant relies uponHampton v. Hardin, 88 N.C. 592, where the Court held the devisee and executor competent to prove that the holograph will was deposited with her for safe keeping. We cannot hold that case well considered. It is in conflict with the terms of the statute which forbids a party or a person interested in the event of an action from testifying as to a transaction or communication with the deceased, and is opposed to the authorities above cited, and, indeed, to all the cases construing that provision of *Page 253 
what is now Rev., 1631. See citations to above cases in the Anno. Ed. and to Bunn v. Todd, 107 N.C. 266, where that section is analyzed. Hampton v.Hardin cannot be recognized as authority, and is overruled.
It appears upon the face of the probate that this will was not found among the valuable papers of the decedent, and that it was shown only by incompetent testimony — the oath of the beneficiary — that it had been deposited with him by the testator for safe keeping, and it is in evidence that the testator for many years had been, and at the time of his death was, confined in an insane asylum. Under these circumstances, it were better that the sanity of the alleged testator at the time of writing the will should have appeared in the probate. But the finding of a holograph will among the valuable papers of the deceased, or competent evidence of its deposit in the other hands for safe keeping, is as essential a part of the proof of execution as that the paper-writing is in the handwriting of the alleged testator. It appears affirmatively here that the latter fact was not shown by evidence sufficient to prove its execution, and it is open to the plaintiffs to contest by this proceeding in the nature of a caveat
the validity of the will on the ground of incompetency and undue influence, and to require due proof that it was delivered by the alleged testator to the beneficiary for safe keeping. In the absence of such proof, which is shown on the face of the probate, the will can have no effect in this State to control the devolution of real property, until proven in solemn form.
It was competent, therefore, for the heirs at law, who are in possession of the realty, to contest the validity of the will as a conveyance of the realty by asking that its record upon the defective probate, as certified, be declared a cloud upon their title. It will be open, however, to the executor and beneficiary of the will to offer it for probate in solemn form, in which case the due execution of the will and the question of the mental incapacity of the alleged testator and undue influence can be submitted to a jury. The decree in this case must set it aside as a cloud upon title, unless and until its validity is established in solemn form, as upon a caveat.
The whole subject has been so fully discussed in Martin v. Stovall
(Tenn.), with elaborate citations in the notes, 48 L.R.A., 130, that further research is unnecessary. The authorities there cited hold that the decree of probate in the State where the testator is domiciled, if valid on its face, is effective as to personal property, though a few courts hold with Bowen v. Johnson, 5 R. I., 112, that the probate even as to personality situated in another State is only prima facie; but the universal rule is that a will, to affect real estate, must conform as to its execution and proof to the law of the State where the land lies. The decisions to this effect are numerous and uniform. In Rice v. Jones, 4 Call (Va.), 89, it was held that, though a will had been declared void by a court in *Page 254 
North Carolina on account of the incapacity of the testator, or for any cause whatever, it could be probated in Virginia as to lands lying in that State.
The almost universal rule may thus be summed up: "Wills of personal property must be executed and probated according to the law of the domicile; but wills devising real estate must be executed and probated in compliance with the law of the State where the land lies."
In Thrasher v. Ballard, 33 W. Va. 285 (25 Am. St., 896), it is said: "Is this her valid will? Of this there is no evidence but this Virginia probate. That could have no force beyond Virginia. It could not operate to pass land in this State by establishing the due execution and validity of the will. 1 Minor's Institutes, 942, 943; Sneed v. Ewing, 5 J. J. Marsh, 460 (22 Am. Dec., 41); Rice v. Jones, 4 Call, 89; 1 Lomax Exr. (341), 555;Bowen v. Johnson, 5 R. I., 112 (73 Am. Dec., 49); Ives v. Allyn, 12 Vt. 589;Kerr v. Moon, 9 Wheat., 565. An executor of one State has no power of suit in another, without reprobate and qualification in such other State.Kerr v. Moon, supra; 1 Rob. New Pr., 161, 162. There the foreign probate is ineffectual. Why not here?" The Court then proceeds to consider the act of Congress touching the authentication of records, and says: "It has been held that probate orders do not fall, like judgments inter partes in ordinary suits, under this provision, but partake of the nature of in rem
proceedings, binding only the property [Bowen v. Johnson, 5 R. I., 112
(73 Am. Dec., 49)], while the reverse view has also been held. Balfour v.Chew, 5, Martin (N.S.), 517. But, grant that probate sentences do fall under the act of Congress that gives the order such force as it has in Virginia; but the force it has there as to property is local and does not affect realty in another State, which is governed by the lex loci rei sitae. In the words of Story on the Constitution, sec. 1313, `The Constitution did not mean to confer a new power of jurisdiction, but simply to regulate the effect of the acknowledged jurisdiction over persons and things within the territory.'"
"The probate of a will in Pennsylvania gives it no validity whatever as to lands in Virginia or Ohio, unless the will is probated in such States, for it is a settled principle of law that the title and transfer of real property depend entirely upon the laws of the country where it is situated." McCormick v. Sullivant, 10 Wheat. (U.S.), 192. To the same purport are numerous cases in the notes to Martin v. Stovall, 48 L.R.A., 130, which see. In Storage Co. v. Windsor, 148 Ind. 682, it is said that, "When a foreign will has been admitted to probate, or may be offered for record, any person interested in the estate may contest such will within the time, in the manner, and for any cause prescribed by the laws of Indiana, in cases of domestic wills." In Gardner on Wills it is said: "The probate of a foreign will puts it on the same footing as a domestic *Page 255 
will, and renders it subject to contest in the same manner as a domestic will would be," citing Dew v. Dew, 23 Tex. Civ. App. 676.
As to realty, the law is thus summed up in 5 R. C. L., p. 1021, sec. 109: "A devise of land will not be effectual unless made and proved according to the lex rei sitoe. For this reason, the mere fact that a will has been admitted to probate in another State is not conclusive of its execution and proof in the manner required by the lex rei sitae. McCormickv. Sullivant, 10 Wheat., 192; Sneed v. Ewing, 5 J. J. Marsh (Ky.), 460, and notes to 48 L.R.A., 133; 2 L.R.A. (N.S.) 428. Hence it is also that the validity of a will may be contested where the land is situated, although probated in another State, and notwithstanding the fact that the decree of another State probating the will is presumed to be correct, and it is further presumed that the court had jurisdiction. Some cases denied the effect on real estate on the ground that the court of original probate had no jurisdiction over the real estate in another State. Notes to 48 L.R.A., 136."
As to personalty, the early authorities were inclined to hold that the probate in another State was merely prima facie as to personalty in this State, though conclusive as to personalty in the State of domicile. But the present state of the law is thus summed up in 5 R. C. L., p. 1017, sec. 104: "It is a firmly established rule that, at common law and in the absence of a local statute to the contrary, the validity of a will of personal property, as to its form, the manner of its execution, and all other matters that relate to its legal existence, as distinguished from its essential validity, depends upon the law of the testator's domicile, irrespective of the law of the place where the will is executed, or of the place where the testator died, or of any other law whatsoever. . . . On the other hand, the formal validity of a will of real property depends upon the law of the State or country where the property is situated, irrespective of the law of the domicile of the testator or of the place where the will is executed."
As to personal property, as a general rule, it follows the person of the owner, and a will held valid in the State of his domicile transfers the title thereto, not only as to the personalty there, but as to personalty here, subject only to liability for debts due to the citizens of this State, and a will of personalty duly probated under the laws of the domicile will not be questioned here when the probate is valid on its face. In such case, those seeking to caveat the will on the ground of incompetency of the testator, or undue influence, or insufficiency of probate (not disclosed on its face), should proceed in the court of the domicile. Where, however, a provision in a will is contrary to our public policy, it is ineffective here. Sorrey v. Bright, 21 N.C. 113.
The demurrer should be sustained as to the personalty, in regard to *Page 256 
which the plaintiffs, if so advised, must proceed by a caveat in Virginia.
As to the realty, the demurrer should have been overruled, and the record of the will must be adjudged a cloud upon the title unless and until it has been established upon a probate in solemn form in this State, and to this extent the judgment below is reversed. The defendant will pay the costs of the appeal.
The costs of this Court will be paid by the defendant administrator of Sylvester Brown out of the funds in his hands.
Reversed.