ARMOUR AND COMPANY, Appellee,

v.

John A. NARD, Appellant.

ARMOUR AND COMPANY, Appellant,

v.

John A. NARD, Appellee.

Nos. 71–1433, 71–1444.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 15, 1972.

Decided June 7, 1972.

Charles R. Wolle, Gerald M. Kraai, D. C. Shull, of Shull, Marshall, Marks & Vizintos, Sioux City, Iowa, for Armour & Co.

Thomas M. Thompson, David B. Buerger, of Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for John A. Nard.

Before BREITENSTEIN, Senior Circuit Judge *, and HEANEY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Plaintiff, Armour and Company (Armour) originally brought this action against defendant contractor, John A. Nard (Nard) for delay damages caused by Nard's alleged breach in the performance of a written cost-plus (15%) building construction contract entered into by the parties on September 6, 1968 for the construction of an Armour hog-cut facility in Sioux City, Iowa. Nard denied there was any breach on his part and counterclaimed for delay damages and 15% commission due on the project. Armour's claim for delay damages was submitted to the jury which returned a verdict in its favor in the sum of $60,000 against Nard. The jury failed to find for the defendant Nard on his counterclaim against Armour for delay damages, but did render a verdict for Nard on his counterclaim in the sum of $20,842.-16 for commissions on costs incurred by Nard prior to termination of the contract.[1] Additional facts will be set out in discussing the various issues raised in this appeal.

### Claims by Armour

Armour claims that the trial court erred in refusing to grant its motion for judgment notwithstanding the verdict on Nard's claim that he was entitled to 15% commissions on two invoices: Central Ice Machine Co. (refrigeration equipment) $116,209.75 and ALCOA (aluminum panels) $22,737.95. On November 21, 1968 Armour terminated its contract with Nard under the provisions of Article 3–A of the contract authorizing termination upon written notice with the obligation upon Armour to pay Nard, the contractor, all costs incurred to date of termination, plus 15% of such costs. The trial court instructed the jury that if it found that Nard became liable or obligated to pay either or both of the foregoing items prior to or on the date the contract was terminated (November 21, 1968) then Nard was entitled to recover 15% of whatever amount the jury determined Nard became liable or obligated to pay. The evidence showed that Nard ordered the goods covered by the invoices in question prior to termination of the contract, but that said goods were invoices in question prior to termination of the contract, and later the invoices were paid by Armour. Armour contends that Nard was not, could not, and never did become liable for, or obligated to pay the disputed costs, and the trial court should have entered a verdict for Armour as a matter of law. However, the record shows that upon termination of the contract, Armour cancelled the orders in question and then reinstated the same orders. Nard's purchasing skills had been used in placing the orders. Washington Construction Co. v. Spinella, 8 N.J. 212,

---

* Of the Tenth Circuit sitting by special designation.

1. The parties stipulated there were commissions due Nard in the sum of $75,-965.10 for which judgment was entered by the Court in favor of Nard and against Armour during the course of the trial. Although the jury verdict did not specify the basis for its verdict, the amount awarded Nard was 15% of two disputed invoices hereinafter discussed.

84 A.2d 617, 28 A.L.R.2d 863 (1951). There was no indication that Armour attempted to exercise its option under the termination provisions of the contract of having the contractor terminate and settle the orders in question. It seems to us that the issue is whether Nard would have been liable had Armour not terminated the orders and then reinstated them. We agree with the trial court that the record is sufficient to support a jury finding that the costs in question had been incurred by Nard at the time of termination.

■ Finally Armour contends the Court erred in ruling that "In light of the nature and complexity of this litigation and the verdict of the jury, each party should bear its own costs." Rule 54(d) of the Federal Rules of Civil Procedure provides as follows:

Costs. Except when express provision therefor is made either in a statute of the United States or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law. Costs may be taxed by the clerk on one day's notice. On motion served within 5 days thereafter, the action of the clerk may be reviewed by the court.

We are satisfied that the Court properly exercised its discretion in directing that each party bear its own costs.

### Claims by Nard

■ Nard urges that Armour was not entitled to damages for delay when it terminated Nard under Article 3A of the contract which provided for termination without cause.[2] In essence Nard claims that since Armour chose to terminate under the "without cause" provisions Armour elected to pursue that exclusive remedy and thereby waived any other remedy it may have had, including damages for delay.

■ It is undisputed that Armour terminated the contract under the "without cause" provision (Article 3A). The contract also provided in Article 2 that failure of the contractor to adhere substantially to the schedule of construction " * * * shall, without waiver of any other right accruing by reason of such failure, be deemed a cause for cancellation * * *." Nard's contention that Armour made a without cause election and thereby waived other remedies fails to take into account another provision of the contract which is as follows:

Article 12.  *Waiver*

Delay or failure by Armour to exercise any right under the Contract Documents shall not constitute a waiver of that or any other right or subsequent right hereunder.

In addition, the Iowa law, which the parties treated as applicable,[3] fails to support Nard's election theory. In Maytag Company v. Alward, 253 Iowa 455, 112 N.W.2d 654, 657 (1962) the Iowa Supreme Court stated: "Even where a contract specifies a remedy which will lie for a breach thereof it is generally held that other legally recognized remedies are not thereby excluded. (Citations omitted)." The Court went on to observe that " * * A contract which excludes some remedy given by law should be so definite and positive in its terms as to show the clear

---

2. Nard moved for summary judgment in his favor on this issue and objected to the introduction of evidence of damages incurred . by reason of alleged delays by Nard. After the jury verdict Nard moved for judgment notwithstanding the verdict for the same reason and for the further reason that evidence was insufficient to support the jury's finding that he, Nard, was responsible for the delays; in the alternative, Nard sought a new trial on the grounds that the jury's verdict was against the weight of the evidence on this issue and that the Court erred in its instructions regarding delay damages. The trial court denied all of Nard's motions and objections.

3. Article 58 of the contract makes Iowa law applicable to its construction and enforcement.

intention of the parties so to do." We also note, as did the trial court, that generally, the exercise of a power of termination will have prospective operation only; discharging both parties from their contractual duty to perform promises that are still wholly executory, but not discharging liability for breaches that have already occurred. 6 Corbin on Contracts, § 1266, p. 66; Iowa Code § 554.2106(3). Upon full review of the contract in question we are satisfied that the parties did not intend to eliminate damages for delay in the event the contract was terminated under the "without cause" provision.[4]

Finally, Nard claims that the trial court erred in excluding evidence of Armour's breach of its oral contract with Nard. The record indicates Nard offered to prove that: In April 1968 he and Armour entered into an oral cost-plus contract for the construction of the Armour hog-cutting facility; as a part of the contract Armour promised to make certain decisions and to supply Nard with information concerning these determinations promptly; Armour failed to provide this information and this failure substantially delayed progress of construction; in addition Armour made certain misrepresentations concerning the load capacity of existing foundations on the site; as a result of these misrepresentations progress of the job was further delayed; had it not been for these delays by Armour in breach of the oral

contract, Nard would have completed construction by the date of termination by Armour. The trial court denied the offer of proof but indicated that Nard would be permitted to offer, and the jury allowed to consider, evidence on the question of alleged delays that occurred during the life of the written contract.[5] Nard then proceeded to testify concerning the delays caused by Armour's conduct prior to and after the execution of the written contract on September 6, 1968.

We agree with the trial court's ruling that in this case the written contract governed the transaction between the parties and that evidence of oral agreements prior thereto and inconsistent therewith was not admissible. Yoder v. Nutrena Mills, Inc., 294 F.2d 505, 512–516 (CA8 1961) affirming 187 F.Supp. 415 (N.D.Iowa 1960); Hetherington Letter Co. v. Paulson Construction Co., 171 N.W.2d 264 (Iowa 1969), supplemented 173 N.W.2d 575, 576 (Iowa 1970). We also note that a review of the record demonstrates that Nard did offer evidence concerning the delays specified in his offer of proof, and, under the Court's instructions, the jury was allowed to consider the issue of whether Armour breached the contract by delaying performance of its obligations [6] and failing to use due diligence to remedy the situation caused by it and award damages, if any, resulting therefrom. Nard concedes in his brief that the writ-

---

4. Nard has not pursued in this appeal his attack on the instructions, nor his claim below that the jury verdict for $60,000 was against the weight of the evidence. These matters are therefore not considered herein.

5. The written contract, although not executed until September 6, 1968, provided that the contractor's work to be performed under the contract documents "shall be commenced on or before the 20th day of May 1968 and shall be completed for acceptance on or before the 31st day of July 1969." The first page of the signed contract documents also included the following agreement:

"1. It is understood by the parties that the Construction Agreement shall cover all work performed on the Site prior to the signing of the Agreement as well as work performed after the signing of the Construction Agreement; and that such work shall be in total conformity with the Construction Agreement, including all specifications and drawings."

6. The jury was instructed that it could consider events occurring prior to the date the contract was executed (September 6, 1968) as they related to the cause of the delays in the construction of the hog-cut facility.

**12**

ten contract by its terms applied to all work on the site prior to its signing and that "he did not offer to prove a contract containing terms different from or inconsistent with the written contract. Rather Nard sought only to prove the existence of an oral contract commencing in April 1968 containing the same operative terms as the subsequent written contract." In substance, Nard claims that had he been allowed to prove the alleged April oral contract and the delays specified in his offer of proof he would have been able to establish that he would have substantially completed the project on or before its termination and thus was deprived of commissions he would have earned. The difficulty is that Nard failed to demonstrate in his offer of proof or in this record that he was deprived of an opportunity to fully develop his evidence as to delay damages. The offer of proof must be specific, counsel must show what he expects to prove by the testimony of the witness. Andrews v. Olin Mathieson Chemical Corporation, 334 F.2d 422, 425 (CA8 1964); Fed.Rules Civ.Pro. 43(c). Where the significance of the excluded testimony is not obvious the offer must demonstrate its import. Hoffman v. Palmer, 129 F.2d 976, 994 (CA2 1942), aff'd on other grounds 318 U.S. 109, 63 S.Ct. 477, 87 L.Ed. 645 (1942); Hawkins v. Missouri Pac. R. Co., 188 F.2d 348, 350 (CA8 1951). *Cf.* United States v. Lowrie, 246 F.2d 472, 475 (CA4 1957). We fail to find on this record that Nard was deprived of the opportunity to establish delay damages. The jury under appropriate instructions found against Nard on this issue. The record supports their finding.

In summary, we are satisfied that the experienced trial judge ably conducted a difficult trial involving several complex legal issues which were correctly resolved and the factual disputes properly submitted to the jury under appropriate instructions.

Affirmed in all respects.